**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JULIO PENA, NANCY PENA, | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | Case No.  SA-24-CA-00481-XR |
| | § | |
| ROXANNE   CARDONA,   IN   HER | § | |
| OFFICIAL CAPACITY; AND OFFICER J | § | |
| ORTIZ, IN HIS OFFICIAL CAPACITY; | § | |
| *Defendants* | § | |

## ORDER GRANTING SUMMARY JUDGMENT

On this date, the Court considered Defendants Roxanne Cardona and Jonathan Ortiz's

Motion for Summary Judgment (ECF No. 28) and the associated briefing (ECF Nos. 30, 35).  After

careful consideration, the Motion is **GRANTED**.

## BACKGROUND[1]

This case arises from a property dispute between, on one side, Plaintiffs Julio and Nancy

Pena and, on the other, non-parties Chad Covin, Johnathan Covin, and Anna Jackson ("the

Covins").  *See* ECF No. 13, ECF No. 28-1.  The Penas owned an insurance agency at 2924

---

[1] To understand the facts in this case, the Court relies significantly on evidence provided by Defendants, specifically an affidavit of Defendant Roxanne Cardona and certain police reports.  *See* ECF Nos. 28-1, 28-2.  Plaintiffs have provided no evidence to controvert these documents—in fact, they attached no evidence at all to their Response to this Motion.  *See* ECF No. 30.

"Unsworn pleadings are not . . . competent summary judgment evidence." *Dorsett v. Bd. of Trs. for State Colls. & Univs.*, 940 F.2d 121, 124 (5th Cir. 1991); *Chester v. Samuels*, 740 F. App'x 410, 411 (5th Cir. 2018) ("[B]ecause [the operative complaint] is unverified, it does not constitute competent summary judgment evidence.").  And "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed."  FED R. CIV. P. 56(e).; *see also Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016) ("[I]f one party presents relevant evidence that another party does not call into question factually, the court must accept the uncontroverted fact.").

1

Ackerman Road, which is at the intersection of Ackerman Road and Landis Drive.[2]  Ackerman Road is a public road, and Landis Drive is a private road.  ECF No. 28-1 at 1.

The Penas claim that they had an easement allowing them to access 2924 Ackerman Road through an entrance on Landis Drive.  ECF No. 1 ¶ 40.  The Covins claim to own Landis Drive and dispute that the Penas had such an easement.  ECF No. 28-1 at 2.

The Penas and Covins have called the police "numerous" times about incidents related to this property dispute.  *Id.*  And the Covins have blocked the disputed portion of Landis Drive with large rocks, a "large monument," and a large container.  *Id.*  Police officers have issued criminal trespass warnings against "all parties involved."  *Id.*

On January 18, 2024, Anna Jackson called 911 to report an alleged theft in progress.  ECF No. 28-2 at 4, 7.  The Covins had placed gravel and a monument on the disputed piece of property.  *Id.*  And the Penas had hired someone to move the gravel and monument onto their property at 2924 Ackerman Road.  *Id.* at 4, 6–7.  Officers Roxanne Cardona and Jonathan Ortiz, along with another police officer, responded to the incident.  *See* ECF No. 28-2.  Cardona was Chief of the Kirby Police Department at the time and remains in that position.  ECF No. 28-1 at 1.

Cardona told Julio Pena to return the gravel and monument to the Covins and that failure to do so would constitute theft.  ECF No. 28-2 at 4.  Julio refused, so he was arrested.  *Id.*  The District Attorney ultimately rejected the case.  *Id.* at 8.

---

[2] The only evidence in the record addressing Landis Drive's location relative to Ackerman Road and the insurance agency simply states the insurance agency's address and that Ackerman Road is "adjacent to" Landis Drive.  ECF No. 28-1 at 1.  The Court takes judicial notice of a Google map and Satellite image for the purpose of determining the relative position of the roads and 2924 Ackerman Road.  *See McCormack v. Hiedeman*, 694 F.3d 1004, 1008 n.1 (9th Cir. 2012) (taking judicial notice of a Google map and satellite image for the purpose of determining approximate distance between two locations).

On February 13, 2024, Nancy Pena was arrested for allegedly assaulting Jonathan Covin. ECF No. 28-1 at 2. Defendants say there is video of the incident, *id.*, but neither party has provided that video to the Court.

The Penas filed suit against the Covins, Cardona, and Ortiz, in state court.[3] ECF No. 1. The case was removed to this Court, *id.* which severed and remanded the claims against the Covins but retained jurisdiction over the claims against Cardona and Ortiz (jointly, "the Officers" or "Defendants"). ECF No. 22.

The Penas first assert Section 1983 claims, arguing that the Officers violated the Fourteenth Amendment's Equal Protection clause by treating the Penas differently from the Covins. ECF No. 13 at 12–13. The Penas also allege that the Officers conspired with the Covins to violate the Penas' constitutional rights, *id.* ¶¶ 94–98, trespassed on the Penas' property, *id.* ¶ 87, and committed the tort of intentional infliction of emotional distress, *id.* ¶¶ 118–24. All of these claims are against the Officers in their official capacities. ECF No. 13.

The Officers filed this Motion for Summary Judgment, ECF No. 28, which is now ripe for consideration, *see* ECF Nos. 30, 35.

## DISCUSSION

### I.    Summary Judgment Standard

To be entitled to summary judgment, a movant must show that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. FED. R. CIV. P. 56. The movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving

---

[3] The Penas also brought claims against C&K Lawn Services, and they initially named Adrian Covin as a defendant instead of Jonathan Covin. ECF No. 13-1 at 1. They later settled with C&K Lawn Services, dropped their claims against Adrian, and added Jonathan as a defendant. *Id.*

party will bear the burden of proof at trial, point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). Nor is a mere "scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could find for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or

weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and it must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

**II.    Analysis**

The Penas bring claims under 42 U.S.C. Section 1983 and state tort law. For the reasons stated below, there is no genuine dispute as to any material fact on those claims, and Defendants are entitled to summary judgment.

a.   Municipal Liability Under *Monell*

First, the Penas have not provided sufficient evidence to support a municipal liability claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and its progeny. As noted above, the Penas' claims are against the Officers in their official capacities. *See* ECF No. 13. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). So this case is, "in all respects other than name," against the City of Kirby.

"[M]unicipal liability under [S]ection 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694); *see also Turner v. Upton Cnty., Tex.*, 915 F.2d 133, 137 (5th Cir. 1990) (applying *Monell* and its progeny to a Section 1983 conspiracy claim). Defendants argue principally that the Penas have not provided any evidence of an official policy.

There are three ways to establish a municipal policy in the context of a *Monell* claim. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019). First, and most obviously, "written

policy statements, ordinances, or regulations" can constitute a municipal policy. *Id.* at 215. Second, "a plaintiff can show 'a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Id.* And third, "a single decision may constitute municipal policy in 'rare circumstances' when the official or entity possessing 'final policymaking authority' for an action 'performs the specific act that forms the basis of the [Section] 1983 claim.'" *Id.*

The Penas have neither alleged nor provided any evidence of a relevant "written policy statement[], ordinance[], or regulation[]." *See* ECF No. 30. And they do not argue that this is one of those "rare circumstances" in which a final policymaker's single decision is the relevant municipal policy. *Id.*[4] So the question is whether, on this record, a reasonable jury could find "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *See Webb*, 925 F.3d at 214–15.

There is no evidence to support such a finding. The Penas argue that Cardona "implemented a policy of refusing to act on Plaintiffs' complaints while taking action on complaints from" the Covins. ECF No. 30 at 2. As an initial matter, the Penas do not provide any evidence of that. *Brown*, 337 F.3d at 541 ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

---

[4] Cardona may be a final policymaker, as required for the "single decision" exception to apply. *See Garza v. City of Donna*, 922 F.3d 626, 637 (5th Cir. 2019) ("We have previously found that Texas police chiefs are final policymakers for their municipalities, and it has often not been a disputed issue in the cases."). But the record contains no evidence that she made a decision that was the moving force behind a constitutional violation. The record reflects only one decision made by Cardona: arresting Julio for theft after he took and refused to return the Covins' monument. The Penas do not argue that decision in itself violated Julio's constitutional rights or that such a violation was the obvious consequence of that decision. *See Liggins v. Duncanville, Tex.*, 52 F.4th 953, 955 (5th Cir. 2022) (For the "extremely narrow" "single decision" exception to apply "the constitutional harm in question must've been the 'plainly obvious' consequence of the actor's single decision.").

They also do not identify any similar conduct by the City of Kirby against others. The Penas' factual assertions are "limited to the events surrounding" the Penas themselves. *Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015). "That is not an allegation of a de facto policy." *Id.* To show "a practice 'so persistent and widespread as to practically have the force of law,' [a plaintiff] must do more than describe the incident that gave rise to his injury." *Ratliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020) (cleaned up) (quoting *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018)). The Penas have provided no factual assertions—let alone evidence—regarding anything but the incident that allegedly gave rise to their injury. So their Section 1983 claims must be dismissed.

b. <u>Tort Claims</u>

The Penas also bring state-law tort claims for trespass and intentional infliction of emotional distress. Again, these are official-capacity claims, meaning they are, in all but name, against the city. *Graham*, 473 U.S. at 166. "Generally, under Texas law, governmental immunity prohibits courts from adjudicating claims against a governmental unit." *Hernandez v. Sierra*, No. EP-22-CV-00201-DB, 2025 WL 510933, at *7 (W.D. Tex. Feb. 14, 2025) (citing *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999)). The Texas Tort Claims Act ("TTCA") "waives governmental immunity for certain negligent conduct, but does not waive immunity for claims arising out of intentional torts." *Aguirre v. City of San Antonio*, 995 F.3d 395, 422 (5th Cir. 2021) (quoting *City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014)); *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 764 (5th Cir. 2023) (affirming dismissal of a trespass claim because the TTCA does not waive immunity for claims arising out of intentional torts); TEX. CIV. PRAC. & REM. CODE. § 101.057.

The Penas argue that their tort claims should survive because the TTCA does not bar a negligence claim arising from the same facts as an intentional tort claim. ECF No. 30 at 5. But, even assuming that is true, the Penas have not asserted any negligence claims. *See* ECF No. 13. They also do not provide any evidence of negligence or explain how any provision of the TTCA would waive immunity if they had. Their tort claims are for intentional conduct, and "intentional conduct, no matter how it is pled, falls under the TTCA's sovereign immunity waiver exception." *Aguirre*, 995 F.3d at 421 (citing *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001)). The tort claims must fail.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment (ECF No. 28) is **GRANTED**, and this case is **DISMISSED.**

A final judgment will issue separately.

It is so **ORDERED**.

**SIGNED** this 22nd day of January, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE